IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

<table>
<tr><td>
PALIN RP INVESTMENTS-2, LLC, a<br>
Washington Limited Liability<br>
Company, and SKLP REAL ESTATE<br>
INVESTMENTS, LLC, a Washington<br>
Limited Liability Company,<br><br>
                Respondents,<br><br>
      v.<br><br>
BUTTERFIELD ASSOCIATES, INC.,<br>
a Washington Corporation,<br><br>
                Defendant,<br><br>
PROPERTY MANAGEMENT VA,<br>
LLC, a Washington Limited Liability<br>
Company,<br><br>
                Appellant.
</td><td>
No. 87790-9-I<br><br>
DIVISION ONE<br><br>
UNPUBLISHED OPINION
</td></tr>
</table>

DÍAZ, J. — Palin RP Investments-2, LLC and SKLP Real Estate Investments, LLC (together, Palin) are owners of a rental property who sued Property Management Vancouver Authority (PMVA) for breach of contract. Palin claimed that PMVA breached its contractual duty when it failed to pay the gas bill on the unoccupied property, resulting in water damage when a valve broke during a cold snap. A jury found in favor of Palin. PMVA moved for a new trial, arguing

that the court erred when it granted Palin's motion in limine to exclude reference to the contract's hold harmless provision. The court denied the motion for new trial, and PMVA raises the same argument on appeal. We affirm the trial court's order.

## I.   BACKGROUND

In 2021, Palin hired Real Property Management Authority (Real Property), a business owned by Butterfield Associates, Inc. (Butterfield), to manage rental properties that Palin owned, including a property located in Vancouver, Washington. In the management agreement, which Real Property drafted, the section titled "Manager's Obligations" gives Real Property inter alia the duty to "execute contracts for utilities and services for the operation, maintenance and safety of the property."

In November 2022, PMVA bought Real Property from Butterfield and assumed the management obligations stated in the contract. PMVA did not pay the gas bill for the property. On December 7, 2022, NW Natural Gas disconnected the gas service to the property due to nonpayment. On December 25, a PMVA maintenance manager visited the property and saw water pouring out of the house from a broken valve underneath the sink of an upstairs bathroom.

Palin sued PMVA for damages and lost rent based inter alia on breach of contract. The trial began on October 21, 2024. During opening statements, PMVA stated that Palin had agreed "to hold the manager harmless from any damage in any suit . . . except in cases of willful misconduct or gross negligence." This is language from the hold harmless provision in the management agreement.

2

Palin then moved in limine to exclude reference to the hold harmless provision. The court found that the hold harmless provision did not protect PMVA under these facts and granted Palin's motion. The jury found in favor of Palin, awarding him $117,819.19 in damages. PMVA filed a motion for new trial, which the court denied. PMVA timely appeals.

## II.     ANALYSIS

PMVA claims that the court erred when it granted Palin's motion in limine, both because the motion was untimely and because it is contrary to Washington law. We address each argument in turn.

## A.     Timeliness

PMVA claims that the court erred in granting Palin's motion because the motion was untimely under its local rules and "deprived [PMVA] sufficient time to respond and to prepare their defense." Palin argues that the court did not abuse its discretion because he filed the motion the day after he first became aware of PMVA's intent to use the hold harmless provision as an affirmative defense, which itself was untimely. We agree with Palin.

A Clark County rule requires parties to bring all motions 10 court days before the hearing or trial. CLARK COUNTY SUPERIOR CT. LOCAL R. 6(d). The court, however, also has discretion to accept untimely materials. Zurich Servs. Corp. v. Gene Mace Constr., LLC, 26 Wn. App. 2d 10, 34, 526 P.3d 46 (2023). We review such rulings for an abuse of discretion. Clipse v. Com. Driver Servs., Inc., 189 Wn. App. 776, 786, 358 P.3d 464 (2015). "A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for

untenable reasons." Gildon v. Simon Prop. Grp., Inc., 158 Wn.2d 483, 494, 145 P.3d 1196 (2006) (citing Mayer v. Sto Indus., Inc., 156 Wash.2d 677, 684, 132 P.3d 115 (2006)).

The court should apply procedural rules "to foster and promote 'the just, speedy, and inexpensive determination of every action.'" See Lybbert v. Grant County, 141 Wn.2d 29, 39, 1 P.3d 1124 (2000) (quoting CR 1(1)). "[W]henever possible, the rules of civil procedure should be applied in such a way that substance will prevail over form." Griffith v. City of Bellevue, 130 Wn.2d 189, 192, 922 P.2d 83 (1996) (quoting First Fed. Sav. & Loan Ass'n v. Ekanger, 93 Wn.2d 777, 781, 613 P.2d 129 (1980)).

The trial court may waive court rules "when appropriate to protect a party's established right if the court ensures the waiver can be implemented in a manner that will adequately protect the rights of other parties who are affected." Zurich Servs. Corp., 26 Wn. App. 2d at 31.

As to the established right in question here, plaintiffs have a right to protection from ambush of a delayed defense during litigation. King v. Snohomish County., 146 Wn.2d 420, 424, 47 P.3d 563 (2002) (citing Lybbert, 141 Wash.2d at 40). For this reason, parties must plead in advance any "'matter constituting an avoidance or affirmative defense.'"[1] Mahoney v. Tingley, 85 Wash.2d 95, 100, 529 P.2d 1068 (1975) (quoting CR 8(c)).

---

[1] Palin characterizes the hold harmless clause as a "release" which must be affirmatively pled in advance pursuant to CR 8(c). Regardless of whether a hold harmless provision is a "release," the legislature did not intend for list of affirmative defenses in CR 8(c) to be exhaustive, specifying that the defending party must also plead "any other matter constituting an avoidance or affirmative defense."

An affirmative defense is a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." Defense, BLACK'S LAW DICTIONARY (12th ed. 2024). Pleading an affirmative defense is unnecessary "if the defense does not raise any new issues." Hedger v. Groeschell, 199 Wn. App. 8, 16, 397 P.3d 154 (2017) (citing Shinn Irrig. Equip., Inc. v. Marchand, 1 Wn. App. 428, 430-31, 462 P.2d 571 (1969)). "Any matter that does not tend to controvert the opposing party's prima facie case as determined by applicable substantive law should be pleaded." Harting v. Barton, 101 Wn. App. 954, 962, 6 P.3d 91 (2000) (quoting Shinn Irrig., 1 Wn. App. at 430-31.).

Both state and federal courts have held that a defense that seeks to avoid liability but does not dispute the facts alleged by the plaintiff—such as a hold harmless defense, release of liability, or exculpatory provision—raises a new issue and therefore must be pled in advance. See, e.g., Deep Photonics Corp. v. LaChapelle, 303 Or. App. 699, 719, 466 P.3d 660 (2020), aff'd, 368 Or. 274, 491 P.3d 60 (2021) (finding that because defendants "waited through discovery, through summary judgment, and even through plaintiffs' presentation of evidence at trial, . . . it was simply too late to plead an affirmative defense"); Siegemund v. Shapland, 324 F. Supp. 2d 176, 183-85 (D. Me. 2004) (sanctioning defendant who "would have been wise to plead the defense affirmatively").[2]

---

[2] Unlike in Siegemund, PMVA did not move to amend its answer. And, unlike in other federal cases, we hold applicability of "the pertinent provision was [not] 'evident' in the contract," or in any other action taken by the parties, which may have obviated the need to affirmatively "invoke an exculpatory provision." Core Commc'ns, Inc. v. Verizon Maryland LLC, 744 F.3d 310, 321 (4th Cir. 2014).

Here, PMVA asserted the following in its answer under "affirmative defenses": that they were not in breach of contract, that their standard of care was not grossly negligent, that damage was due to Palin's "own negligence and failure to have appropriate paperwork signed authorizing the gas to be turned back on," and that Palin failed to maintain proper home insurance. PMVA did not reference the hold harmless provision or argue that they are only liable for breach of contract if Palin shows willful misconduct or gross negligence.

"'Generally, affirmative defenses are waived unless they are (1) affirmatively pleaded, (2) asserted in a motion under CR 12(b), or (3) tried by the express or implied consent of the parties.'" Bickford v. City Of Seattle, 104 Wn. App. 809, 813, 17 P.3d 1240 (2001) (quoting Henderson v. Tyrrell, 80 Wn. App. 592, 624, 910 P.2d 522 (1996)). The purpose of the rule is to avoid surprise. Id. "[W]here a failure to plead a defense affirmatively does not affect the substantial rights of the parties, the noncompliance will be considered harmless. Hogan v. Sacred Heart Med. Ctr., 101 Wn. App. 43, 54-55, 2 P.3d 968 (2000).

Palin alleges they were surprised by PMVA's argument in their opening statement that they were protected by the hold harmless provision. PMVA does not dispute the fact that they did not include the defense in their pleadings and does not claim that Palin had prior notice of the defense. Therefore, even though Palin filed the motion in limine on the second day of trial, the motion was a timely response to PMVA's untimely assertion of an affirmative defense. The court, in turn, did not abuse its discretion when it chose to "prevent a defendant from ambushing a plaintiff" with a delayed defense by considering Palin's motion in

6

limine on the merits.  King, 146 Wn.2d at 424.

B.      Hold Harmless Provision

PMVA argues that the court's decision to exclude the hold harmless provision "turned on a legal mischaracterization of the text" and is an error requiring reversal.  PMVA argues that the language in the management agreement is clear and unambiguous in protecting PMVA from all claims, including first-party claims, unless a claimant shows PMVA engaged in willful misconduct or gross negligence. We disagree.

Where parties dispute a contract's language, a court determines parties' intent by analyzing the agreement's "objective manifestations" rather than the "unexpressed subjective intent" of the parties.  In re the Est. of Petelle, 195 Wn.2d 661, 665, 462 P.3d 848 (2020) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)).  Generally, words in a contract are given their "ordinary, usual, and popular meaning unless the agreement clearly demonstrates a contrary intent."  Grey v. Leach, 158 Wn. App. 837, 850, 244 P.3d 970 (2010).  We review a trial court's interpretation of a contract de novo.  In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).

More specifically, "clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor."  Nw. Airlines v. Hughes Air Corp., 104 Wn.2d 152, 157-58, 702 P.2d 1192 (1985) (quoting Jones v. Strom Constr. Co., 84 Wn.2d 518, 520, 527 P.2d 1115 (1974)).

7

Here, the provision in question is a section subtitled "Owner's Obligations" and a subsection entitled "Hold Harmless." Generally, a hold harmless provision in a contract obligates one party to indemnify the other party "against claims that might be brought by *third parties*." Indemnity Clause, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added). For example, in Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc., 173 Wn.2d 829, 833, 271 P.3d 850 (2012), our Supreme Court held that, after a contracting party had "settled the claims" with the third parties, the provision allowed the party to sue "for indemnification" from the other contracting party.

These clauses, therefore, are not favored and are to be strictly construed, in favor of Palin. Hughes Air Corp., 104 Wn.2d at 157-58. Thus, the "ordinary" meaning of such clauses protects PMVA only from claims by third parties, not from the other contracting party. Grey, 158 Wn. App. at 850.

In response, PMVA focuses on the following terms of the "Hold Harmless" provision, which states:

> "OWNER agrees to hold the MANAGER harmless from the damage in any suits in connection with the management of the herein described property and from liability from injury suffered by any employee or other person whomsoever, and to carry, at his own expense adequate public liability. The MANAGER also shall not be liable for any error of judgment or for any mistake of fact or law, or for anything which he may do or refrain from doing hereunder, except in cases of willful misconduct or gross negligence."

PMVA is correct that Washington courts sometimes interpret hold harmless claims to apply to first parties. See Scott By & Through Scott v. Pac. W. Mountain

8

Resort, 119 Wn.2d 484, 491, 834 P.2d 6 (1992).[3]   But "[i]nterpretations giving lawful effect to all the provisions in a contract are favored over those that render some of the language meaningless or ineffective."  Pelly v. Panasyuk, 2 Wn. App. 2d 848, 865, 413 P.3d 619 (2018).   And PMVA's interpretation would render meaningless the entire "Manager's Obligations" section.

Moreover, Washington courts have interpreted similar language in an agreement to "hold you harmless from and against all costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of every kind or nature" as only protecting from third-party claims.  Delson Lumber Co., Inc. v. Washington Escrow Co., Inc., 16 Wn. App. 546, 549, 558 P.2d 832 (1976).  Otherwise, "[w]ere we to construe the provision in [a] fashion [that insulates a wrongdoer's actions from first party claims], defendant's duty and promise under the agreement would be illusory."  Id. at 552.

That is, PMVA's interpretation would render the contract nearly meaningless since the protected party would have no real obligation to fulfill their contractual duty absent willful misconduct or gross negligence.  And "courts must avoid construing contracts in a way that leads to absurd results."  King County. v.

_____

[3] In Scott By, our Supreme Court held that a hold harmless provision is sometimes interpreted as an exculpatory clause and exculpatory clauses "shift ultimate responsibility *for negligence*."  119 Wn.2d at 491 (emphasis added).  But Palin prevailed on a claim for breach of contract.  PMVA cites no case in which a court interpreted a broad hold harmless or exculpatory provision to protect against a breach of contract claim, where none is mentioned.  In Revolutionar, Inc. v. Gravity Jack, Inc., cited by PMVA, the contract in question specifically released the defendant from liability for "breach of contract."  No. 36499-2-III, slip op. at 38-39 (Wash.     Ct.     App.     Apr.     28,     2020)     (unpublished), https://www.courts.wa.gov/opinions/pdf/364992_unp.pdf.     The     management agreement at issue here does not contain such language.

Walsh Constr. Co. II, LLC, 27 Wn. App. 2d 156, 163, 532 P.3d 182 (2023) (quoting Grant County Port Dist. No. 9 v. Wash. Tire Corp., 187 Wn. App. 222, 236, 349 P.3d 889 (2015)). Although some portions of the hold harmless provision are broad, it would be absurd to conclude that the intention was to allow the protected party to "completely avoid its contractual obligations" because the contract precludes recovery in case of breach. See City of Tacoma v. City of Bonney Lake, 173 Wn.2d 584, 593, 269 P.3d 1017 (2012).

Even if the language in the hold harmless provision of this contract is somehow viewed as contradictory or ambiguous as to whether PMVA is protected from Palin's claim, "the contract will be construed against the drafter." King v. Rice, 146 Wn. App. 662, 671, 191 P.3d 946 (2008); see also Haney v. State Farm Ins. Co., 52 Wn. App. 395, 397, 760 P.2d 950 (1988) (holding that ambiguity exists where separate contract clauses create an "inherent contradiction").

PMVA's predecessor-in-interest, Real Property, drafted the agreement. Because PMVA assumed the rights and obligations of the drafter when it bought the business, we construe any contradiction or ambiguity against PMVA. See Hanson Indus., Inc. v. County. of Spokane, 114 Wn. App. 523, 531, 58 P.3d 910 (2002) (holding that contract ambiguity should be construed against the successor-in-interest to the drafter). And PMVA's interpretation fails for that alternative reason.

In turn, since the hold harmless provision protects only against third-party claims, the provision is not "of consequence to the determination of" the breach of contract claim before the court and is therefore irrelevant. ER 401. Even relevant

evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403. We give great deference to the trial court's "balancing of probative value against prejudicial effect" in ER 403 rulings. Degroot v. Berkley Constr., Inc., 83 Wn. App. 125, 128, 920 P.2d 619 (1996). The court did not abuse its discretion in excluding the hold harmless provision, since the provision is both irrelevant and likely to mislead the jury.

The court did not err in rejecting PMVA's interpretation of the contract and did not abuse its broad discretion, in turn, to exclude the provision from the jury's consideration.[4]

C.      Attorney Fees

Palin requests attorney fees under the hold harmless clause and RCW 4.84.330. Br. of Resp. at 30-32. "A party is entitled to attorney fees on appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000).

The hold harmless provision contains the following unilateral attorney fee language: "If suit is brought to collect the MANAGER's compensation or if MANAGER successfully defends any action brought against MANAGER by OWNER, relating to the property, OWNER agrees to pay all costs incurred by

---

[4] PMVA also assigns error to the trial court's failure to include Defendant Butterfield on the verdict form. PMVA does not address this alleged error in its briefing. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment." Brown v. Vail, 169 Wn.2d 318, 336 n. 11, 237 P.3d 263 (2010). We therefore do not address this assignment of error.

MANAGER in connection with such action, including reasonable attorney's fee."

Per RCW 4.84.330, a unilateral attorney fees provision should be applied bilaterally. Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 494, 200 P.3d 683 (2009). PMVA does not dispute Palin's argument that the provision must be applied bilaterally per RCW 4.84.330, asking us only to deny the fees should it prevail. Because we affirm, Palin is the prevailing party and is therefore entitled to attorney fees on appeal. Palin is directed to perfect their request by following RAP 18.

### III.   CONCLUSION

We affirm the trial court's order.

Díaz, J.

WE CONCUR:

Mann, J.